Argued September 20, affirmed December 18, 1978

GROTH, *Appellant,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(No. 77-489E, CA 11116)

588 P2d 45

Alan M. Lee, Klamath Falls, argued the cause and filed the brief for appellant.

W. D. Bates, Jr., Associate Counsel, State Accident Insurance Fund, Legal Division, Eugene, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Legal Division, Salem.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Claimant appeals from a circuit court affirmance of a Workers' Compensation Board denial of his claim for compensation for a disability to his low back which he contends is work-related. We agree with the denial.

The dispositive question is whether claimant's low back problem which first became the subject of attention in mid-1975 is related to his industrial injury of July, 1974, at which time claimant made a claim for injury only to the base of his neck, which occurred when lifting a five-gallon can. During a period of over a year immediately subsequent to his claimed neck injury, claimant was treated regularly and frequently by a neurosurgeon. The neurosurgeon's reports dealt with the neck problem and did not even hint of the low back condition until September 17, 1975, at which time claimant reported severe low back pain to him. The doctor's report, dated that day, both reported the low back problem and recommended claim closure, stating:

> "The patient's neck condition is stationary and the claim can be closed. There is a lightly moderate disability of the neck as a result of the accident of July 24, 1974."

From this it seems obvious that the doctor did not consider the low back problem to be related to the industrial injury.

On April 18, 1975, an orthopedist who saw claimant reported that claimant's complaints related to his neck only and diagnosed claimant's problem as a mild cervical sprain without likelihood of permanent disability.

In January of 1975, claimant was evaluated medically at the Disability Prevention Division. There was no claim or diagnosis of any low back abnormality. In fact, there was no assertion of a causal relationship between claimant's low back problems and his industrial injury until, shortly before the hearing, he went

to Dr. Laubengayer and gave him a history wholly at odds with the history and complaints apparently given to every other doctor he had seen previously. Claimant told Dr. Laubengayer that he had injured his low back as early as 1970 or 1971. The record shows that in 1970, as well as in 1974, claimant had made a compensation claim for an injury to his neck, not to his low back.

At the hearing claimant testified:

"Q. Did you have any symptoms anywhere else in your back, other than your shoulder blades?

"A. Well, when I got up to the house there, they took me up and I laid down there in shade there for awhile, and then I wanted to get up, and my legs bothered me and *my lower back was sore.* When I'd get up, I was unstable.

"* * * * *

"Q. Did the symptoms persist as far as your low back?

"A. Yes, um-hum.

"Q. Did they get any worse or any better?

"A. No, they was *getting worse* all the time.

"* * * * *

"Q. When did you first notice the low back problem and the leg problem?

"A. Well, I would say half an hour or an hour after I lifted that can of gas.

"Q. Was it while you were lying under the tree, or after you stood up, or when?

"A. Well, I would say when I really noticed is when I stood up there.

"Q. And how did you feel, then?

"A. Well, I don't know how you would explain it. I was pretty miserable, I can tell you that.

"Q. Was that from the upper back pain or the low back pain?

"A. Well, I'd probably say from both of them.

"* * * * *

"Q. Now, you said you went to see Dr. Campagna [neurosurgeon] in September of '74. That was September 19th, '74. Did you see him about your low back problem?

"A. Yes, sir.

"Q. At that time, how would you compare your lower back to your upper back?

"A. I'd say they were just about equal at that time.

"* * * * *

"Q. * * * Did you tell the doctors up in Portland about the low back problems you were having?

"A. Yes."

In spite of all this testimony by claimant that he noticed substantial low back problems from the date of the accident and reported them to the doctors, the medical reports are totally devoid of any mention of a low back problem for over a year after the accident. Either claimant was fabricating or he has a poor memory. In either case he is not a credible witness.

At the hearing when Dr. Laubengayer was presented with information that claimant's earlier injury was solely to his neck and that he had made no complaints of his low back condition to the neurosurgeon, the orthopedist or the Disability Prevention Division doctors, he recanted his earlier opinion. He then concluded that, based upon the evidence as it actually appeared to be, it was unlikely that there was a relationship between the low back condition and the 1974 injury. The farthest he would go in support of claimant's position was to say that there was a possibility of a causal relationship.

We find nothing in the record to support claimant's contention that his low back difficulties were related to his July, 1974, accident, except his own testimony, and that testimony, in light of all the other evidence, we find not persuasive.

Affirmed.

THORNTON, J., dissenting.

Contrary to the majority and the Workers' Compensation Board (Board), my reading of this record convinces me that the referee was correct in concluding

that claimant established that his low back problems were related to the 1974 injury, and that his claim for compensation should therefore not have been denied.

The accident occurred in July 1974. When claimant began seeing a surgical neurologist in September 1974, he told the neurologist about his leg problems, which included aching, lack of coordination and tingling at night. He also told the doctor about his upper back problems. The neurologist diagnosed and treated "post-traumatic cervical cephalgia."

In January 1975 claimant, who had been laid off his ranch job because of his inability to work, went to the Disability Prevention Division of the Workers' Compensation Board for rehabilitation. He reported trouble with coordinating his legs, but no leg pains.

In September 1975 claimant again saw the neurologist, complaining of leg and low back pain. Claimant knew of no new injury to his back. The neurologist diagnosed a protruded lumbar disc, and shortly thereafter performed a lumbar laminectomy.

In December 1975 claimant saw another orthopedic surgeon. He gave a history to the surgeon linking his then-absent lumbar pain to an earlier back injury, as well as to the 1974 accident. The surgeon noted that any report of tingling in the legs, such as claimant reported immediately after his 1974 injury, would imply that low back problems are involved. He also said that lumbar disc protrusion was more common after an injury than otherwise. The surgeon thought it unlikely that the low back pain and accident were linked when he found that the aching and tingling of the legs occurred only at night, and because a one-year delay occurred between the accident and a report of low back pain. However, he later noted that lumbar problems frequently involved an accident followed by immediate pain, then a pain-free period, especially if the patient were inactive for a while as was claimant, and then pain again. Usually, he said, the immediate

pain is quite severe, but could be masked by other pain such as the immediate cervical pain claimant suffered in the 1974 accident.

The clinical psychologist who examined claimant for the State Accident Insurance Fund concluded after a detailed psychological examination and numerous tests that claimant's physical complaints were genuine, that he was "not exaggerating his symptoms nor is he in any way malingering."

The referee held that claimant had established his claim for a low back injury, finding claimant credible. Although there is some confusion in the record, I would agree with the referee that claimant has established by a preponderance that his low back problems arose from accidents in the course of his employment.

For the above reasons I respectfully dissent.